NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1419
_____

JODY SCHULTZ,
Appellant

v.

GOLDBELT GLACIER HEALTH;
DEPARTMENT OF UNITED STATES AIR FORCE,
Air Force Personnel Center, National Guard Bureau
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(W.D. Pa. No. 2-15-cv-00848)
District Judge: Hon. Maureen P. Kelly, Chief Magistrate Judge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 26, 2017
_____

Before: GREENAWAY, JR., COWEN, *Circuit Judges,* and PADOVA, *District Judge.*[*]

(Opinion Filed: November 1, 2017)

_____

OPINION[**]
_____

---

[*] The Honorable John R. Padova, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellant Jody Schultz alleges that Appellee, the Department of the United States Air Force ("Air Force"), refused to hire her on account of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Schultz appeals from the District Court's Order granting the Air Force's motion for summary judgment. For the reasons set forth below, we will affirm.

## I. BACKGROUND

Schultz is a 63-year-old licensed professional counselor. From 2011 to 2013, she was employed by Optimization Consulting, a private contractor that provided counseling and mental health services for the Air National Guard, 171st Air Refueling Wing ("171st Air Refueling Wing," or "171st") in Coraopolis, Pennsylvania. During this time, Schultz was the Director of Psychological Health, a position that required her to provide counseling services to Airmen at the 171st Air Refueling Wing and act as a consultant to command leadership. In March 2013, Goldbelt Glacier Health Services ("Goldbelt") took over Optimization Consulting's contract at the 171st. Schultz, however, remained the Director of Psychological Health, but now as an employee of Goldbelt.

Sometime in 2014, Schultz learned that the Air Force was considering terminating the Goldbelt contract and providing counseling services itself. Schultz subsequently began to seek other employment and submitted online applications for several jobs listed on the USAJOBS website, including a Social Worker position with the Air Force. That Social Worker job announcement indicated that there were vacancies throughout the

2

country, including the Greater Pittsburgh Airport. The announcement also had an "open period" from April 1, 2014 to September 30, 2014, and it advised applicants that "[t]he length of time [their] application[s] [would] remain active [would] vary based on the closing date of this Public Notice." App. 254. The announcement further explained that the requirements for the position included a "master's degree in social work [from] a school accredited by the Council on Social Work Education," as well as a "Clinical Social Work license to practice independently from a U.S. jurisdiction." App. 248–49.

Schultz possessed neither the required master's degree nor the required Clinical Social Work license, but she nonetheless submitted an application for the Social Worker position on September 28, 2014. The Air Force, however, did not hire any social workers from this job announcement. All applications submitted under the announcement were terminated and not carried over to subsequent job listings.

After the open period for the first Social Worker announcement ended, the Air Force posted a second USAJOBS announcement for a Social Worker position, this one with an open period of October 1, 2014 to March 31, 2015. Again, the posting explained that applications would remain active "based on the closing date of this Public Notice." App. 285. And again, the announcement indicated that the requirements for the position included a master's degree in social work from a school accredited by the Council on Social Work Education and a Clinical Social Work license to practice independently. Like the first posting, the second announcement also listed vacancies at locations throughout the country, including both Coraopolis and the Greater Pittsburgh Airport.

3

Schultz did not submit an application for this second USAJOBS announcement. She testified that she thought the application for the previous social worker announcement would be considered for this vacancy as well. Instead of completing an application, Schultz sent a letter, dated December 23, 2014, to Colonel Darrick Cunningham, who she believed was the selecting official for the social worker position.[1] In the letter, Schultz wrote that she "wish[ed] to retain [her] position as Wing Director of Psychological Health" for the 171st Air Refueling Wing. App. 417.

On January 7, 2015, Schultz received a letter from Goldbelt notifying her that Goldbelt's contract with the Air Force would be ending on January 31, 2015 and that her employment would be terminated at that time. Schultz subsequently sent an email on January 29 to all members of the 171st Air Refueling Wing, notifying them of her departure. In that email, Schultz wrote, "I'm not leaving because I want to and I'm not being fired. The position is changing and I don't have the correct credentials to change with it." App. 204. Schultz later explained that she was referring to the fact that she could not keep her position because she was not a licensed social worker.

One week later, on February 5, 2015, Schultz, through her attorney, faxed a letter to the National Guard requesting Equal Employment Opportunity ("EEO") counseling "leading to a formal complaint for age discrimination – failure to be hired by Air National Guard/US Air Force as of Feb 1, 2015." App. 305. Then on February 9,

---

[1] According to an Air Force human resource specialist, the selecting official for the position was actually Colonel Gregg A. Perez.

4

Schultz wrote an email to Colonel Cunningham and other military officials (copying her attorney), in which she wrote, "I am interested in a position with the Air Force/Air Force National Guard in my capacity as [a licensed professional counselor] effective immediately." App. 352.

On February 19, Schultz submitted a "Charge of Discrimination" alleging that she applied for a position for which she was qualified, but that she had not been hired because of her age—which at the time was 60. Schultz's request for EEO counseling was routed to Kenneth Vybiral, the Equal Employment Manager and Equal Opportunity Advisor for the Pennsylvania National Guard. On March 13, 2015, Vybiral sent an email to Schultz's attorney attaching forms to be completed prior to scheduling EEO counseling. Schultz's attorney returned the completed forms to Vybiral on March 19. According to Vybiral, he then attempted to schedule Schultz's EEO counseling session, but Schultz's attorney did not allow anyone to speak with Schultz and requested that all documentation in the case be addressed to him. Schultz's attorney later submitted an affidavit stating that his "standard procedure is to ask that the interview be done by written interrogatories which should be routed through [his] office." App. 435. Schultz's attorney added that "Mr. Vybiral did not indicate that this procedure was unacceptable." App. 436. Interrogatories were never sent, though, and Schultz's case was never assigned a case number. According to Vybiral, case numbers generally are not assigned until after initial counseling, and because Schultz did not participate in counseling, her case was not further processed.

Eventually, the Air Force hired Matthew Dalrymple for the social worker position at the 171st Air Refueling Wing. Dalrymple, who is approximately twenty years younger than Schultz, was selected after he submitted an application for the second USAJOBS announcement. He holds a master's degree in social work, is a licensed clinical social worker, and was previously a social worker with the Department of Veterans Affairs. Dalrymple also invoked his status as a U.S. Army veteran during the application process. He started working at the 171st on April 5, 2015.

On June 29, 2015, Schultz filed suit against Goldbelt for wrongful termination and the Air Force for failure to hire, both in violation of the ADEA. Goldbelt was dismissed from the case after a successful alternative dispute resolution session resolved the wrongful termination claim. But the claim against the Air Force remained, and following the close of discovery, the Air Force filed a motion for summary judgment, which the District Court granted.[2] The court concluded that Schultz had failed to exhaust administrative remedies and was unable to establish a prima facie case of discrimination because she never submitted an application for the job announcement from which Dalrymple was actually selected and because she did not have the requisite master's degree in social work or clinical social work license. The court accordingly entered judgment in favor of the Air Force. Schultz then filed this timely appeal.

---

[2] By the consent of the parties, Chief Magistrate Judge Maureen Kelly exercised the authority of the District Court. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction over this case under 28 U.S.C. § 1331.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant of summary judgment. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 665 (3d Cir. 2016).  Thus, we will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[3]  We view "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017) (quoting *Burns v. Pa. Dep't of Corrections*, 642 F.3d 163, 170 (3d Cir. 2011)).  To avoid summary judgment, however, the non-movant cannot "rely merely upon bare assertions" or "conclusory allegations."  *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## III. ANALYSIS

Schultz challenges both of the District Court's grounds for granting summary judgment.  She first argues that the Court erred in ruling that she had failed to exhaust administrative remedies, because, according to her, she filed an EEO charge, but the Air

---

[3] The District Court mistakenly cited an out-of-date version of Rule 56, under which summary judgment was appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  App. 8; Fed. R. Civ. P. 56(c)(2) (amended 2010).  This error does not affect the result here, however.

7

Force refused to act on the charge. And second, Schultz contends that she has in fact made out a prima facie case of age discrimination because the evidence shows she applied and was qualified for the Social Worker position. Neither of these arguments are availing.

## A. Exhaustion of Administrative Remedies

An ADEA plaintiff has "two alternative routes for pursuing a claim of age discrimination." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991). She "may invoke the [Equal Employment Opportunity Commission's (EEOC)] administrative process and then file a civil action in federal district court" if she is not satisfied with the outcome. *Id.* Or, she "can decide to present the merits of [her] claim to a federal court in the first instance," after giving the EEOC thirty days' notice of her intent to do so. *Id.* at 6. Once the plaintiff has chosen to initiate the administrative process, however, she must see it through before filing a lawsuit. *See Purtill v. Harris*, 658 F.2d 134, 138 (3d Cir. 1981).[4]

---

[4] The soundness of this holding from *Purtill* is in doubt in light of a 1992 revision to the ADEA's implementing regulations. But even if those regulations have superseded *Purtill*, Schultz has still failed to comply with the ADEA's exhaustion requirement, because her suit was untimely under the regulations. Specifically, 29 C.F.R. § 1614.407(b) now authorizes ADEA complainants to file suit in federal court 180 days after the filing of their complaint with the EEOC, if the agency has yet to take a final action on the complaint and an administrative appeal has not been filed. Schultz argues that she complied with that regulation, which was provided to her on a rights advisement form that she signed and returned to Vybiral. The problem with Schultz's contention, though, is that she has severely miscounted the number of days between initiating her administrative complaint and filing suit. She first contacted the Air Force about filing an age discrimination complaint on February 5, 2015, and she filed this lawsuit on June 29, 2015. Accordingly, Schultz waited, at most, 145 days before filing suit. And therefore,

8

Here, the parties agree that Schultz invoked the administrative process by filing an informal complaint, completing the required forms, and filing a charge of discrimination. Accordingly, she was required to wait for an agency decision before filing suit. *See Purtill*, 658 F.2d at 134. But Schultz failed to wait for the EEOC to act on her charge and, after less than five months, proceeded instead to file this lawsuit. Under *Purtill*, Schultz's abandonment of the administrative process is fatal. She has failed to meet the ADEA's exhaustion requirement.

Schultz argues that summary judgment on the exhaustion issue is inappropriate because "there is at least a genuine issue of material fact as to whether the EEO[C] failed to perform its statutory duty by conducting the initial counseling via written interrogatories," as Schultz's counsel had requested. Appellant's Br. at 24. We disagree. Nothing in the governing regulations contemplates the use of written interrogatories in lieu of in-person counseling. Indeed, those regulations expressly envision an "initial counseling session." 29 C.F.R. § 1614.105(b)(1). Further, the EEOC Management Directives, with which EEO Counselors must comply, *see id.* § 1614.105(c), instruct that the "EEO process begins when a person who believes s/he has been aggrieved *meets with an EEO Counselor*." U.S. Equal Emp. Opportunity Comm'n, Equal Employment Opportunity Management Directive for 29 C.F.R. Part 614 (EEO-MD-11), at 2-1 (2015) (emphasis added). Thus, there is no basis to conclude that the EEOC had a "statutory

even if we were to hold that *Purtill* is no longer good law, we would still conclude that Schultz has failed to comply with 29 C.F.R. § 1614.407(b).

9

duty" to conduct the initial counseling using interrogatories. If anything, an EEO counselor may have been required to insist on meeting with Schultz in person.

Nor is Schultz entitled to equitable estoppel on the issue of exhaustion. Such relief should be granted only "in extraordinary situations." *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997). And "[r]unning throughout the equitable estoppel cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim." *Id.* Here, even if we accept Schultz's contention that Vybiral suggested interrogatories would be acceptable, Schultz has still failed to present evidence showing that she meaningfully pursued the administrative process any further. She does not allege, for instance, that her attorney even once followed up with Vybiral after the interrogatories did not arrive promptly. Nor does she claim that she or her attorney contacted anyone else about her age discrimination charge. Thus, viewing the evidence in the light most favorable to Schultz, we find that over the course of several months, she did nothing to pursue her administrative claim. Under such circumstances, we have no hesitation concluding that Schultz has failed to exhaust her administrative remedies. We therefore affirm the District Court's granting of summary judgment in favor of the Air Force.

## B. Schultz's Prima Facie Age Discrimination Case

Even if Schultz had complied with the ADEA's exhaustion requirement, we would nevertheless affirm the District Court because Schultz has failed to make out a prima facie case of age discrimination. To establish such a case a plaintiff must show 1) that she is forty years of age or older; 2) that she applied for and was qualified for the job; 3)

that she was rejected despite her qualifications; and 4) that the Air Force ultimately hired someone for the position who was sufficiently younger to permit an inference of age discrimination. *Fowle v. C & C Cola, a Div. of ITT-Cont'l Baking Co.*, 868 F.2d 59, 61 (3d Cir. 1989); 29 U.S.C. § 631. Only once the plaintiff makes out a prima facie case does the burden shift to the defendant "'to articulate some legitimate, nondiscriminatory reason' for the failure to hire." *Fowle*, 868 F.2d at 61 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant provides such a reason, then the burden shifts back to the plaintiff to prove that the proffered reason was in fact pretext. *Fowle*, 868 F.2d at 62.

In this case, Schultz is unable to make out a prima facie case because she failed to apply for the job at issue. We have previously held in the Title VII context that failure to formally apply for a job opening does not bar a plaintiff from establishing a prima facie case of discriminatory hiring, "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer," *EEOC v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir. 1990). Alternatively, a plaintiff need not formally apply if he was deterred from applying due to the employer's discriminatory practices, or "had a real and genuine interest" in the job "but reasonably believed that a formal application would be futile." *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1415 (3d Cir. 1990).

Schultz concedes the fact that she did not submit a formal application for the second USAJOBS announcement—the announcement from which Matthew Dalrymple

11

was hired as the Social Worker for the 171st Air Refueling Wing. Instead, she argues that she "made every reasonable effort to convey her interest in the position" to the Air Force. Appellant's Br. at 14. In support of this contention, she stresses that she submitted a formal application for the first Social Worker job announcement during its open period in September 2014,[5] submitted various letters of recommendation, sent a letter to Colonel Cunningham in December saying she wished to retain her position, and then sent an email in February 2015 to Colonel Cunningham and other military officials saying she was interested in a positon with the Air Force in her capacity as a licensed professional counselor.

These actions are not sufficient to show that Schultz made a reasonable effort to convey her interest in the Social Worker position. None of the actions adequately explain why Schultz failed to submit a second USAJOBS application. Indeed, that Schultz submitted an application for the first USAJOBS announcement shows she knew or should have known how the application process worked. The first announcement made clear that applications would only remain active until the closing date, September 30, 2014, and nothing in either the first or second announcement suggested that applications would

---

[5] It bears emphasis that Schultz does not bring a failure to hire claim regarding the first USAJOBS announcement, for which she did submit a formal application. Schultz filed a Motion to Amend Complaint in the District Court, seeking permission to add a failure to hire claim regarding that first USAJOBS announcement, but the District Court denied the motion. Schultz does not challenge that order in this appeal. Thus, for our purposes, Schultz's application to the first announcement is relevant only to the extent that it shows she made a reasonable effort to convey her interest in the second announcement—the announcement from which Dalrymple was actually hired.

be transferred to other announcements. On the contrary, both announcements expressly stated that it was "the applicant's responsibility to verify that the information entered, uploaded, or faxed . . . is received, accurate and submitted by the closing date." App. 253, 284. Thus, Schultz knew or should have known to submit an application for the second USAJOBS announcement, and her application for the first announcement does not constitute a reasonable attempt to convey her interest in the second.

Nor do Schultz's December 2014 letter and February 2015 email to Colonel Cunningham convey such an interest, because neither actually referenced the open Social Worker position. Rather, Schultz said in the letter that she wanted to retain her position as Director of Psychological Health. And she said in the email that she was interested in a position with the Air Force in her capacity as a licensed professional counselor. As other circuits have held, "[a] general interest in being rehired without submitting an application is not enough to establish a *prima facie* case of age discrimination when the defendant-employer has publicized an open position." *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003); *see also Williams v. Giant Food Co.*, 370 F.3d 423, 430 (4th Cir. 2004); *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 146 (6th Cir. 1989); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376–77 (7th Cir. 1985). Viewing the evidence in the light most favorable to Schultz, at best, she did no more than communicate an interest in continuing to work for the 171st Air Refueling Wing in some capacity. The District Court was correct to conclude that Schultz did not adequately express a specific interest in the Social Worker position at the 171st.

Moreover, even if Schultz had applied for the Social Worker job, she still would not be able to establish a prima facie case of age discrimination because she lacked the requisite qualifications for the position. The second USAJOBS announcement stated that a "master's degree in social work [from] a school accredited by the Council on Social Work education" was a "Basic Requirement[]" for the job. App. 280. Schultz concedes that she does not have such a degree. The announcement also said that applicants must have "a Clinical Social Work license to practice independently from a U.S. jurisdiction" and must submit a copy of the license with their application. App. 281. Schultz concedes that she does not have such a license.

She instead contends that she was nonetheless qualified for the Social Worker position because she had performed the duties of the position for four years and was commended for her performance during that time period. The Air Force responds that it made the determination to include the degree and license requirements because the newly hired in-house social workers would be working independently and without the ability to consult other personnel within their unit. Schultz does not rebut that explanation, and without any evidence that the Air Force's proffered rationale is pretextual, we think it inappropriate to second-guess its determination of what the appropriate qualifications for the position are. *See Gorence v. Eagle Food Centers*, *Inc.*, 242 F.3d 759, 765 (7th Cir. 2001) ("What the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with.").

Schultz also claims that the Air Force hired a number of people for Social Worker

14

positions elsewhere in the country who, like her, are licensed professional counselors rather than licensed social workers. She argues that those hires show that the degree and license were not actually essential requirements. The Air Force, however, provided evidence to the trial court that the individuals Schultz identified were hired not as Social Workers, but as Psychological Health Program Specialists, a lower-paying position with different job requirements. Schultz has no response to the Air Force's evidence and is thus unable to establish a genuine dispute as to a material fact regarding whether the requirements for the Social Worker position were any different than advertised in the USAJOBS announcement. We agree with the District Court's conclusion that Schultz has failed to make out a prima facie case of age discrimination.

## IV. CONCLUSION

For the reasons set forth above, Schultz has not complied with the ADEA's exhaustion requirement and has failed to establish a prima facie case of age discrimination. We will therefore affirm the District Court's granting of summary judgment in favor of the Air Force.